STATE v. GRADY MATTHEWS.

(Filed 4 May, 1966.)

1. **Receiving Stolen Goods § 5—    Evidence held for jury on charge of receiving stolen goods with knowledge they had been stolen.**

    The State's evidence tending to show that defendant suggested to confederates that if they stole guns from a certain store he could sell the guns for them, that his confederates stole the guns and brought them to defendant's house and put them in the back of a car outside defendant's house, that the next day they put the guns in the car of one of the confederates and defendant drove the confederate's car around to various people he knew, selling all of the guns but one, *is held* sufficient to carry the case to the jury on the charge of receiving stolen property with knowledge at the time that it had been stolen, defendant's evidence in contradiction not being considered on motion for nonsuit.

2. **Receiving Stolen Goods § 6—**

    The judge's charge in this prosecution for receiving stolen goods with knowledge that they had been stolen *is held* without prejudicial error.

3. **Criminal Law § 107—**

    Exception to the charge on the ground that the court failed to apply the law to the evidence in the case *held* untenable. G.S. 1-180.

4. **Receiving Stolen Goods § 2—**

    The indictment in this prosecution for receiving stolen goods with knowledge at the time that they had been stolen *held* sufficient and valid.

MOORE, J., not sitting.

APPEAL by defendant from *Brock, S.J.,* January 1966 Criminal Session of RANDOLPH.

Criminal prosecution on the following bill of indictment:

"THE JURORS FOR THE STATE, UPON THEIR OATH, DO PRESENT: That Grady Matthews late of the County of Randolph on the 12th day of December A.D. 1965, with force and arms, at and in the County aforesaid, nine (9) shotguns and three (3) rifles of the total value of SIX HUNDRED TWO AND No/100 ($602.00) DOLLARS of the goods, chattels and money of one Reece Hodgin, before then feloniously stolen, taken and carried away, feloniously did receive and have the said Grady Matthews then and there well knowing said goods, chattels and moneys to have been feloniously stolen, taken and carried away, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State."

The defendant through his counsel, Hal Hammer Walker and Deane F. Bell, entered a plea of not guilty. Verdict: Guilty as charged.

From a judgment that defendant be imprisoned for a term of not less than three nor more than five years, defendant appealed to the Supreme Court.

*Attorney General T. W. Bruton and Deputy Attorney General Harry W. McGalliard for the State.*

*Walker, Anderson, Bell & Ogburn by Deane F. Bell for defendant appellant.*

PER CURIAM. The State and defendant offered evidence. Defendant assigns as error the denial by the court of his motion for judgment of compulsory nonsuit made at the close of the State's evidence, and the denial by the court of a similar motion made by him at the close of all the evidence.

The State offered evidence as follows: About 11 p.m. on 12 December 1965 Dannie Gales, Bradford Butler, a 14-year-old boy, and defendant were in the Wagon Wheel Restaurant. Gales and defendant had a drink together. Defendant told Gales and Butler that if they would go to Reece Hodgin's store in the town of Ramseur, go into the store and get the guns for him, he would sell them the next day. The agreement was "it would be a 50-50 deal." Gales and Butler got 25% apiece. A short while thereafter, Gales and Butler drove to Ramseur, parked the car behind the Shell station, went to Reece Hodgin's store, broke the lock on the back door, and went in the store. They took from the gun rack thirteen guns of the value of

$600, went back to the Shell station, and put these guns in the automobile. They then drove back to Asheboro. When they arrived in Asheboro they went to defendant's home about 3 a.m. They woke him up. Defendant looked at the guns, and told them to put them in the back of a car outside, come back the following day, and he would sell the guns for them. They put the guns in the back of an old Plymouth car there, and left. The following day Gales and Butler went back to defendant's home. They got the guns out of the old Plymouth car and put them in Gales's car. Defendant drove Gales's car around to various people he knew, and they sold all of these guns except one to these people for various amounts. When any of the purchasers paid defendant for the guns, defendant put the money in his pocket. Defendant gave Gales a small amount of the money, and Gales gave Butler some of the money. Gales was to see defendant later to get some more of the money, but he did not go back to see him. Of the guns they stole, defendant kept a double barrel Spanish made shotgun.

Twelve of the guns were afterwards returned to Reece Hodgin by the sheriff's department of Randolph County. Hodgin identified these guns as guns stolen from his store the night of 12 December or 13 December 1965. The guns belonged to Hodgin, and had a value of approximately $600.

Defendant's evidence in summary is as follows: He was not in the Wagon Wheel Restaurant on the night of 12 December 1965. On that night he was in Albemarle. He never told Gales and Butler to break in Reece Hodgin's store. About 3:30 a.m. on 13 December 1965 Clinton McQueen, who runs a cafe for him, Dannie Gales, and Bradford Butler came to his house. He was in bed asleep. McQueen knocked on the side door, awakened him, and told him to come to the front door, that he had something for him. He went to the front door, and all three of them came in the house. McQueen said to him, "Butch [Gales] has got some guns, and he wants to see you, Grady." He told them to bring the guns in. They brought the guns in and Gales told him that he wanted $150 for the guns. He told them he did not have $150. Gales asked him if he would take the guns down to Wimpy Ward's, and he told them he would between 8 and 9 o'clock the next morning. Gales asked him if he could leave the guns at his house. He replied no, but he had an old car out there and McQueen had an old car out there, and that if they wanted to they could leave the guns in one of the cars. The next day Gales and Butler came back. Gales told him to take the keys and drive Gales's car. Gales and Butler got the guns and put them in Gales's car. He drove off and the first stop they made was at Ray Jarrell's house. He told Jarrell that Gales and Butler had some guns they wanted to

sell, and that they wanted $150 for the guns. Jarrell looked at them and said, "I'd buy all of the guns, but I'm scared they are stolen, they might be stolen." Gales replied, "No, they are not stolen." Jarrell bought a rifle. He paid $8 for it. They then went around to Charles Moody's house, and he said that Wimpy Ward had gone to Florida. Gales sold Moody a 30-30 rifle for $30. Butler handed the rifle out of the back seat and received the money. His brother bought one of these guns, and Jesse Rufus Marshall also bought one of these guns. When he left the car, some of the guns were still in the car. He did not know the guns had been stolen, because Gales told him that he and Butler had gotten them from a friend in Reidsville. He did not receive any of the guns, and did not receive any money from the sale of the guns.

Considering the evidence in the light most favorable to the State, it was amply sufficient to carry the State's case to the jury, and to support the verdict, and defendant's motions for judgment of compulsory nonsuit were properly overruled by the trial judge. *S. v. Brady,* 237 N.C. 675, 75 S.E. 2d 791.

Defendant assigns as error that the judge charged the jury: "Now, the offense charged here has at least four distinct elements that the State must satisfy you beyond a reasonable doubt about." The court then instructed the jury as to the essential elements of the crime of receiving stolen goods substantially as stated in *S. v. Brady, supra,* quoting from 1 Wharton's Criminal Evidence, 10th Ed., § 325b, p. 643, with the exception that Wharton states there are three elements, and the second element is ". . . (b) that the accused, knowing them to be stolen, received or aided in concealing the goods," and the trial judge charged: ". . . second, that the defendant received the goods that were stolen; third, that at the time of receiving the goods the defendant knew that they had been stolen." This assignment of error is overruled upon authority of the *Brady* case.

Defendant assigns as error that the trial judge committed prejudicial error in failing to apply the law to the evidence in the case, G.S. 1-180. This assignment of error is overruled. An examination of the charge shows that the trial judge in his charge substantially complied with the requirements of G.S. 1-180. In addition, the trial judge clearly charged the jury in substance that if it found beyond a reasonable doubt from the evidence that defendant was guilty of receiving stolen property, knowing it to have been stolen, as he had defined the offense for it, and found beyond a reasonable doubt that the guns were of a value of $600, then it would return a verdict of guilty as charged, but if under those circumstances it found the guns were of a value of $200 or less, then it would return a verdict of

guilty of receiving stolen goods, knowing them to have been stolen, of a value of $200 or less, a misdemeanor. This conforms to the decision in *S. v. Cooper,* 256 N.C. 372, 124 S.E. 2d 91. The verdict is "Guilty as charged."

Defendant assigns as error the court's denying his motion in arrest of judgment on the ground the indictment is defective. The trial judge properly denied the motion in arrest of judgment, for the simple reason the indictment is not defective. *S. v. Brady, supra* (the indictment is set forth verbatim in the case on appeal which is in the office of the clerk of this Court); *S. v. Best,* 232 N.C. 575, 61 S.E. 2d 612 (the indictment is set forth verbatim in the case on appeal which is in the office of the clerk of this Court); Bishop's Practical Directions and Forms, Ch. LXXIII.

In the trial below we find
No error.

MOORE, J., not sitting.